UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| United States of America<br><br>v.<br><br>Jamal Hall | Crim. No. 2:18-cr-72-cr-1 |

**REPORT AND RECOMMENDATION**
**AND ORDER**
(Docs. 43, 51)

Jamal Hall, proceeding *pro se*, moves under 28 U.S.C. § 2255 to vacate, set aside, or correct his federal sentence, following his conviction of possession of a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. 43; Doc. 51; *see* Doc. 30.) Presently before the Court are Hall's Amended Motion Under § 2255 (Doc. 43; *see* Doc. 44) and his Motion to Supplement the Record (Doc. 51).[1]

At sentencing, Hall's Sentencing Guidelines range was 84–105 months. In his plea agreement, Hall and the government agreed that the appropriate term of imprisonment was 84 months. On July 29, 2019, United States District Judge Christina Reiss sentenced Hall to an 84-month term of imprisonment, to be followed by a three-year term of supervised release. Hall did not file a direct appeal.

---

[1] Hall filed the Motion to Supplement the Record under Fed. R. Civ. P. 15(d). (Doc. 51 at 1.) He filed the Motion to provide "new found court authority," specifically *United States v. Southerland*, 405 F.3d 263 (5th Cir. 2005). The Motion also includes argument regarding the application of *Southerland* to Hall's § 2255 Motion. The government's response addresses Hall's reliance on *Southerland*. This Report and Recommendation also addresses Hall's claim under *Southerland*. Therefore, the Court GRANTS the Motion to Supplement the Record. (Doc. 51.)

Hall now contends that his offense level should not have been increased two levels under USSG §3C1.2 for reckless endangerment during flight from law enforcement officers. He maintains that the enhancement was inapplicable because his August 2, 2018 high-speed chase with the Vermont State Police (VSP): (1) did not amount to reckless endangerment; and (2) was not related to his offense of conviction. Hall further asserts that he received ineffective assistance of counsel because his attorney did not object to the reckless-endangerment-during-flight enhancement under §3C1.2. The government opposes Hall's § 2255 Amended Motion on the following grounds: (1) to the extent that Hall is challenging the enhancement on the merits, he is procedurally barred from pursuing the claim in § 2255 proceedings because he failed to raise the claim on direct appeal; and (2) he has not demonstrated ineffective assistance of counsel because his attorney's representation on the §3C1.2 issue was reasonable and did not prejudice Hall. (Doc. 52.)

For the reasons set forth below, I recommend that Hall's § 2255 Amended Motion (Doc. 43) be DENIED.

## Factual and Procedural Background

### I. The Charge and Plea Agreement

On April 13, 2018, Rutland Police responded to a call regarding an altercation at the Hide-A-Way Tavern in Rutland, Vermont. (PSR at 4, ¶ 10.) After speaking with witnesses and reviewing video footage, the officers concluded that Hall pointed a handgun at another patron and fired a single shot into the floor of the tavern. (*Id.* ¶ 11.) When later interviewed by officers, Hall stated that he felt "cornered" and "threatened" by another individual at the bar, and fired a "warning shot" at the floor. (*Id.* at 5, ¶ 16.) Officers recovered a .40 caliber bullet casing from the floor and a bullet lodged in a pool table. (*Id.* at 4, ¶ 11.) Later that day, law enforcement

recovered the pistol in an alley near the tavern. (*Id.* ¶ 12.) The State of Vermont filed charges against Hall for reckless endangerment and aggravated assault with a weapon, and issued a warrant for his arrest. (*Id.* at 13, ¶ 60.) On June 20, 2018, Hall was charged by federal indictment with possession of a firearm as a convicted felon, and a federal arrest warrant issued. (*Id.* at 3, ¶ 1.)

On August 2, 2018, a VSP trooper observed Hall's vehicle traveling on U.S. Route 7. (*Id.* at 13, ¶ 59.) The trooper was aware that Hall had active state and federal arrest warrants and was a suspect in a stolen vehicle complaint. (*Id.*) When VSP attempted to stop him, Hall's vehicle "slowed and came to a stop, but suddenly pulled away after [the] VSP trooper began exiting his patrol car." (*Id.*) While leading the troopers on a high-speed chase, Hall exceeded 90 miles per hour in a 50-mile-per-hour-zone, traveled over the double yellow line into oncoming traffic several times, and eventually crashed his car into a vehicle stopped at an intersection. (*Id.*) After crashing the vehicle, Hall fled on foot until he was apprehended and taken into custody on the pending federal and state charges. (*Id.* ¶¶ 59–60.)

Hall pleaded guilty to possession of a firearm as a convicted felon on April 12, 2019. (Doc. 18; Doc. 22 (text-only entry).) Pursuant to Fed. R. Crim. P. 11(c)(1)(C), Hall and the government agreed that the appropriate term of imprisonment was 84 months. (Doc. 18 at 5, ¶ 13.) The plea agreement also provided:

> JAMAL HALL understands, agrees and has had explained to him by counsel that the Court may impose the following sentence on his plea: up to 10 years of imprisonment, pursuant to 18 U.S.C. § 924(a)(2); up to a 3-year term of supervised release, pursuant to 18 U.S.C. § 3583(b)(2); up to a $250,000 fine, pursuant to 18 U.S.C. § 3571(b)(3); and a $100 special assessment.

(*Id.* at 1, ¶ 2.) At Hall's change of plea hearing, the Court confirmed that he understood the terms of the plea agreement. (Doc. 48 at 8:8–10.) The Court also explained to Hall the impact of the plea agreement on sentencing:

> [COURT]: Do you understand that if the Court accepts the plea agreement, it's bound by law to give you the sentence set forth therein but there's no promise as to any other aspect of the sentence?
> [HALL]: Yes.
>
> . . . .
>
> [COURT]: Do you understand that other than what's in the plea agreement, any estimate or prediction that Ms. Quinn, your attorney, or anyone else gave you about the sentence in this case is not binding upon the Court? So, for example, if she said, "I think the sentencing guideline range is going to be X, Y, or Z" and it turns out that she's wrong, I need you to know that's not going to give you a basis to withdraw your guilty plea.
> [HALL]: Okay.
> [COURT]: And—and that goes for everybody else.
> [HALL]: Yes, I do.

(*Id.* at 8:16–20; 11:4–14.)

## II. The PSR and Sentencing

In calculating the applicable Guidelines range, the PSR determined that the base offense level was 20. (PSR at 6, ¶ 22.) *See* USSG §2K2.1(a)(4)(A). The base offense level was increased four levels because Hall used the firearm in connection with another felony offense. (PSR at 6, ¶ 23.) *See* USSG §2K2.1(b)(6)(B). The PSR then added two levels because Hall "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer when he led VSP troopers on a high-speed chase on August 2, 2018." (PSR at 6, ¶ 26.) *See* USSG §3C1.2. Hall received a three-level reduction for acceptance of responsibility, resulting in a final offense level of 23. (PSR at 6, ¶¶ 29–31.) *See* USSG §§3E1.1(a) and (b). The PSR assigned Hall a criminal history score of 12, corresponding to a Criminal History Category of V. (PSR at 12, ¶¶ 56–57.) *See* USSG

Ch. 5, Part A. An offense level of 23 and a Criminal History Category of V yielded an advisory Guidelines range of 84–105 months. (PSR at 19, ¶ 113.)

Judge Reiss adopted the PSR's calculation of the Guidelines. (Doc. 31 at 15–16.) After consideration of the sentencing factors under 18 U.S.C. § 3553(a), the Court sentenced Hall to 84 months of imprisonment, followed by a three-year term of supervised release. (*See id.* at 16–18; 19:24–20:2.) Hall did not appeal.

**III. Hall's Amended Motion Under 28 U.S.C. § 2255**

Hall challenges the application of the reckless-endangerment-during-flight enhancement under USSG §3C1.2, asserting that his offense of conviction was a "separate offense" from the offense of eluding law enforcement, which was "charged by a different sovereign." (Doc. 43 at 3.) He contends that the high-speed chase related solely to the fact that he was driving a stolen vehicle, and not to any outstanding arrest warrants. (Doc. 51 at 2, ¶ 6.) According to Hall, his federal offense conduct and the high-speed chase were "totally separated by date, time, nature of the offense, and jurisdiction." (Doc. 43 at 3.) He further contends that he received ineffective assistance of counsel because his attorney, David McColgin, did not object to the enhancement. (Doc. 43 at 3; Doc. 51 at 4.) Hall argues that without the two-level enhancement, his advisory Sentencing Guidelines range would have been lower than 84 months. (Doc. 51 at 4.)

**<u>Discussion</u>**

**I. Controlling Legal Standards**

**A. Motions Under 28 U.S.C. § 2255**

An individual serving a federal sentence in custody may seek to correct that sentence if (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess

of the maximum authorized by law," or (4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Review under § 2255 is "narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources." *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996) (internal quotation marks omitted). Generally, claims not raised on direct appeal may not be raised on collateral review unless the defendant establishes "(1) cause for the procedural default and ensuing prejudice, or (2) actual innocence." *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011). A movant shows cause and prejudice where the "claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (internal quotation marks omitted); *see Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995). This high bar for collateral review is intended to "conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 504 (2003). However, "requiring a criminal defendant to bring ineffective-assistance-of-counsel claims on direct appeal does not promote these objectives," and therefore petitioners may raise ineffective-assistance-of-counsel claims for the first time in a § 2255 motion. *Id.*

**B. Ineffective-Assistance-of-Counsel Claims**

The Sixth Amendment guarantees criminal defendants the right to be "assisted by an attorney . . . who plays the role necessary to ensure that the trial is fair." *Strickland v. Washington*, 466 U.S. 668, 685 (1984). Critically, "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). A defendant alleging ineffective assistance of counsel must demonstrate that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.

"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. The standard to which an attorney's performance should be held is that of "reasonably effective assistance." *Id.* at 687. When analyzing counsel's conduct, the defendant must identify counsel's specific acts or omissions in the context of "the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. In its consideration of counsel's performance, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *see also Raysor v. United States*, 647 F.3d 491, 495 (2d Cir. 2011). The determinative question is not whether counsel "deviated from best practices or most common custom," but rather whether the "representation amounted to incompetence under prevailing professional norms." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal quotation marks omitted). Strategic choices "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91.

Even if counsel's conduct was professionally unreasonable, the defendant must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," and it "requires a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (internal quotation marks omitted) (citing *Richter*, 562 U.S. at 112). In the context of sentencing, "the defendant must show a reasonable probability that, but for counsel's substandard

performance, he would have received a less severe sentence." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013). The Second Circuit "requires some objective evidence other than defendant's assertions to establish prejudice." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003).

## II. Hall's collateral challenge to his sentence based on the application of §3C1.2 is procedurally barred because he did not raise this claim on direct appeal and has not demonstrated that application of the enhancement resulted in a "complete miscarriage of justice."

"In general, a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal." *Thorn*, 659 F.3d at 231. "[C]laims regarding a sentencing court's error in failing to properly apply the Sentencing Guidelines are neither constitutional nor jurisdictional," and thus "absent a complete miscarriage of justice, such claims will not be considered on a § 2255 motion where the defendant failed to raise them on direct appeal." *Graziano*, 83 F.3d at 590. "[I]n sentencing, a miscarriage of justice cognizable under § 2255 occurs when the sentence is in excess of that authorized by law." *Sun Bear v. United States*, 644 F.3d 700, 706 (8th Cir. 2011) (citing *Addonizio*, 442 U.S. at 184).

As Hall's crime of conviction carried a statutory maximum of ten years' imprisonment, *see* 18 U.S.C. § 924(a)(2), his 84-month sentence is not in excess of that permitted by law. *See Sun Bear*, 644 F.3d at 706. Hall's sentence also did not result in a miscarriage of justice given that it fell squarely within the Guidelines range calculated without the two-level enhancement. *See United States v. Hoskins*, 905 F.3d 97, 104 (2d Cir. 2018) (observing that Defendant's sentence that "falls in the middle of the Guidelines range applicable to him without [the inapplicable] enhancement" made it "particularly difficult for him to show that such a sentence manifests a complete miscarriage of justice"); *Sun Bear*, 644 F.3d at 706 (finding no miscarriage of justice where "the 360-month sentence was both below the statutory maximum *and* within the

unenhanced guidelines range"). Without the contested two-level enhancement, Hall's Guidelines range was 70–87 months. As his 84-month sentence was within the unenhanced Guidelines range, he cannot show his sentence amounted to a complete miscarriage of justice. *See Graziano*, 83 F.3d at 590; *Hoskins*, 905 F.3d at 104.

Because Hall did not raise this claim on appeal, and the alleged misapplication of the Guidelines did not result in a miscarriage of justice, his claim is procedurally barred on habeas review.[2]

## III. Hall's ineffective-assistance-of-counsel claim is without merit because he has not demonstrated that his attorney's representation was objectively unreasonable.

Even assuming his claim was not procedurally barred, Hall's ineffective-assistance-of-counsel claim is without merit. He contends that he received ineffective assistance of counsel because Attorney McColgin did not object to the application of the sentencing enhancement under USSG §3C1.2 (Doc. 43 at 3.) Hall further alleges that Attorney McColgin did not adequately investigate whether the sentencing enhancement applied to his case. (Doc. 51 at 4.) As explained below, Hall has not shown that Attorney McColgin's overall performance was objectively unreasonable.

### A. Attorney McColgin reasonably determined that the facts of Hall's case satisfied the requirements of §3C1.2.

To establish that a defendant's offense level should be increased under §3C1.2, the government must show that the defendant "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." USSG §3C1.2. Under the Guidelines' relevant conduct provisions, the Court may consider "all

---

[2] As noted above, claims not raised on direct appeal may be raised on collateral review if the movant shows cause for his procedural default and resulting prejudice, or actual innocence. Hall does not address these exceptions in his Motion.

acts and omissions committed . . . by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." USSG §§1B1.3(a)(1)(A), (a)(1)(B). The §3C1.2 Application Notes explain that the adjustment applies "where the conduct occurs in the course of resisting arrest." USSG §3C1.2, comment 3.

The Second Circuit has approved application of the §3C1.2 enhancement to similar facts. *See United States v. Williams*, 254 F.3d 44, 47 (2d Cir. 2001). In order to avoid arrest, Williams "jumped [his car] over the curb and onto the sidewalk," nearly striking a police vehicle, "and sped the wrong way up [a] one-way street." *Id.* at 45. Law enforcement pursued Williams "for approximately two miles at speeds at excess of 70 miles per hour in [a] 50-mile-per-hour zone." *Id.* Williams drove erratically, changed lanes often, and did not pull over when officers turned on their lights and sirens. *Id.* The court concluded that Williams "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer," warranting the two-level increase under §3C1.2. *Id.* at 47 (internal quotation marks omitted).

Although Hall contends that the facts in his case were insufficient for application of the enhancement (Doc. 51 at 2, ¶ 4), Attorney McColgin reasonably concluded otherwise. Hall drove 90 miles per hour in a 50-mile-per-hour-zone, drove into oncoming traffic, and after deployment of spike strips, crashed into another vehicle stopped at an intersection. (PSR at 13, ¶ 59.) Attorney McColgin explained his reasoning in not contesting the §3C1.2 enhancement:

> I determined that there was a sufficient factual basis for [the §3C1.2] enhancement based on the facts set out in PSR ¶ 13 . . . .
>
> I determined that the two-level enhancement legally applied under USSG §3C1.2 because the high-speed chase and crash took place during flight from officers seeking to arrest Mr. Hall based on the outstanding warrants relating to the instant

> charge, and therefore constituted relevant conduct for purposes of USSG §1B1.3. In addition, the elements of the enhancement were satisfied by the facts that (1) Mr. Hall was "fleeing from a law enforcement officer" and (2) the high-speed chase and crash "created a risk of death or serious bodily injury to another person." USSG §3C1.2.
>
> Based on these factual and legal determinations, I did not see any valid basis to object to the two-level enhancement . . . .

(Doc. 49 ¶¶ 4–6.) Attorney McColgin's affidavit demonstrates that he considered the relevant facts under the elements of §3C1.2 and reasonably determined in his professional judgment that the enhancement applied.

**B. Counsel was objectively reasonable in not raising a "nexus" objection to the §3C1.2 enhancement.**

Separate from whether the facts in his case justified application of the enhancement, Hall also challenges the purported lack of nexus between the high-speed chase and his offense of conviction. Relying on *United States v. Southerland*, 405 F.3d 263 (5th Cir. 2005), he asserts that a closer relation between the offense and the flight is required for the enhancement to apply. Hall faults Attorney McColgin for not recognizing the legal significance of *Southerland* to the issue and therefore failing to object to the enhancement. (Doc. 51 at 4–5.)

In *Southerland*, the Fifth Circuit determined that the defendant's February 24, 2003 flight from officers was insufficiently connected to his conviction for a December 23, 2002 bank robbery to permit the enhancement under §3C1.2. 405 F.3d at 264–65, 268–69. *Southerland* interpreted the relevant conduct provisions of §1B1.3 to require that the enhancement be based on "acts or omissions that occurred during *the commission of the offense of conviction*, in preparation for *that* offense, or in the course of attempting to avoid detection or responsibility for *that* offense." *Id.* at 268 (internal quotation marks omitted). The court further held that the government "need not demonstrate that the underlying offense caused either the reckless

endangerment during flight or the flight itself, only that a sufficient nexus lie between the underlying offense and the reckless flight." *Id.*

The Fifth Circuit concluded that "Southerland's reckless endangerment conduct [was] insufficiently connected to the bank robbery conviction because the government failed to show that the flight occurred in the course of attempting to avoid detection or responsibility for that specific offense." *Id.* The court explained that the determination of a sufficient nexus turns primarily on "any evidence of the defendant's state of mind while fleeing." *Id.* (citing *United States v. Duran*, 37 F.3d 557, 560 (9th Cir. 1994), *abrogated on other grounds by Tapia v. United States*, 564 U.S. 319 (2011)). "[T]he temporal and geographic proximity of the reckless endangerment during flight to the offense of conviction" are secondary considerations "that supplement the inquiry into the defendant's state of mind." *Id.* at 269.

As an initial matter, *Southerland* is a Fifth Circuit case and not binding authority in the District of Vermont. Its holding on the §3C1.2 enhancement was not the law in this jurisdiction at the time of Hall's sentencing. Therefore, Attorney McColgin was not ineffective in his representation by not objecting to the enhancement based on *Southerland*. In addition, at the time of Hall's sentencing, the Second Circuit had not directly addressed the nexus requirement for application of the enhancement. Moreover, the Court is not aware of Second Circuit authority at the time of Hall's sentencing (or subsequent to the sentencing) that adopted *Southerland*'s nexus requirement under §3C1.2. When Hall was sentenced in 2019, it appears that only one district court in the Second Circuit had explicitly considered the nexus issue. *See Trent v. United States*, No. 09-CV-5546 (SJF), 2012 WL 157288, at *5 (E.D.N.Y. Jan. 17, 2012). In *Trent*, police officers found a firearm while searching Trent's home in his absence. *Id.* at *1. While officers executed the search warrant, other officers stopped and arrested Trent for reckless

driving and unlawfully fleeing a police officer. *Id.* Trent was convicted of possession of a firearm as a convicted felon. On habeas review, he argued that the "flight had nothing to do with the charge in the case" and was motivated by his "concerns for his personal safety." *Id.* at *5. "Given the temporal and geographic proximity between the events, as well as petitioner's motivation to conceal his illegal activity," the court concluded "there was a sufficient nexus between petitioner's flight and the offense to which he pleaded guilty" and defense counsel was not ineffective for declining to object to the enhancement. *Id.* However, *Trent* did not opine on what is legally required to establish nexus for purposes of the enhancement.

Even subsequent to Hall's sentencing, the Second Circuit only briefly addressed a challenge to a §3C1.2 enhancement in a summary order. *See United States v. DeJesus*, 852 F. App'x 575 (2d Cir. 2021). After a federal grand jury indicted DeJesus and 15 coconspirators for narcotics and firearms offenses, DeJesus "engaged in a weeklong, dangerous flight from police, committed multiple car thefts, and repeatedly assaulted a domestic partner." *Id.* at 576. The district court reasonably concluded that the defendant was aware he was being sought for federal charges "based on the fact that the defendant was engaging in some of his federal offense conduct while fleeing." *Id.* at 577–78. The Second Circuit held that "the district court did not clearly err by rejecting DeJesus's argument that he was not fleeing from the federal charges but from state authorities who might apprehend him for his violence toward the mother of his child." *Id.* *DeJesus* did not provide guidance on the nexus required for application of §3C1.2, noting only that the district court correctly applied the enhancement because it reasonably concluded DeJesus was aware that he was wanted on federal charges. *Id.*

In addition, although several Courts of Appeals have interpreted §3C1.2 to include a nexus requirement, the issue is not settled. The Fifth, Sixth, and Seventh Circuits have explicitly

concluded that a nexus is required. *See Southerland*, 405 F.3d at 268–69; *United States v. Dial*, 524 F.3d 783, 787 (6th Cir. 2008); *United States v. Seals*, 813 F.3d 1038, 1045 (7th Cir. 2016). It appears that the Third, Ninth, and Tenth Circuits have assumed without deciding that a nexus is required because in each of those cases the defendant's flight was clearly related to the offense of conviction. *See United States v. Doe*, 723 F. App'x 178, 179 (3d Cir. 2018) (holding that it was reasonable to infer that Doe's flight was "prompted by his concern that he would be apprehended with evidence of the drug conspiracy" and thus it "need not decide whether §3C1.2 requires . . . a nexus because one exists in this case); *Duran*, 37 F.3d at 559–60 (assuming "without so holding that U.S.S.G. § 3C1.2 requires a nexus between the crime of conviction and the reckless endangerment"); *United States v. Davidson*, 283 F. App'x 612, 615 (10th Cir. 2008) (noting that the court has "doubts whether there is a nexus requirement since reckless endangerment may simply be part of relevant conduct under §1B1.3").

At the time of Hall's sentencing, however, the First, Second, Fourth, Eighth, Eleventh, and D.C. Circuits do not appear to have addressed at all whether §3C1.2 requires a nexus between the offense of conviction and reckless endangerment during flight. Because the law was not settled across circuits, and the Second Circuit had not squarely addressed the issue, Attorney McColgin's conclusion that there was a sufficient factual and legal basis for the §3C1.2 enhancement was not unreasonable.[3] *See Delgado v. United States*, No. 6:17-CR-6060 EAW, 2021 WL 5567361, at *5 (W.D.N.Y. Nov. 29, 2021) (declining to find representation objectively unreasonable where the "law is not entirely settled"); *Martinez v. United States*, No. 14-CR-79,

---

[3] Although he did not use the term "nexus" explicitly in his Affidavit, Attorney McColgin's conclusion that §3C1.2 applied appears to have been based, in part, on his determination that there was an adequate connection between Hall's offense conduct and the flight through application of the Guidelines' relevant conduct provisions. (Doc. 49 ¶¶ 4–6.)

2020 WL 435364, at *4 (W.D.N.Y. Jan. 28, 2020) (noting that the court "need not definitively resolve" the underlying application of case law to defendant's sentence, and rather must decide whether counsel's performance "fell below an objective standard of reasonableness").

As *Strickland* instructs, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. While Hall asserts that Attorney McColgin did not adequately investigate the application of §3C1.2 to Hall's sentence, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 691. Attorney McColgin's affidavit demonstrates that he accounted for the legal and factual considerations related to the enhancement, and reasonably determined that the enhancement applied. (Doc. 49.) His decision on the issue was well within the scope of objectively reasonable representation.

**C. Given that Hall's 84-month stipulated sentence was within the Guidelines range without the §3C1.2 enhancement, he cannot show that the alleged ineffective assistance would have resulted in a lesser sentence.**

Further, even if Attorney McColgin's representation was objectively unreasonable, Hall has not demonstrated prejudice under *Strickland*. In the context of sentencing, "the defendant must show a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence." *Gonzalez*, 722 F.3d at 130. Prior to sentencing, Hall and the government reached a binding Rule 11(c)(1)(C) agreement requiring an 84-month prison sentence. (Doc. 18.) Without application of the contested Guidelines enhancement, Hall's Guideline range would have been 70–87 months. Other than his own speculative assertions, Hall

has not demonstrated a "reasonable probability" that he "would have received a less severe sentence." *Gonzalez*, 722 F.3d at 130; *see Pham*, 317 F.3d at 182. Hall's 84-month sentence fit squarely within the Guidelines range without the reckless endangerment enhancement. "While district courts cannot presume the reasonableness of a Guidelines sentence, . . . in the absence of procedural error, within-Guidelines sentences will rarely be unreasonable." *Hoskins*, 905 F.3d at 105; *see Rita v. United States*, 551 U.S. 338, 341 (2007) (concluding that Courts of Appeals may "presume that a sentence imposed within a properly calculated United States Sentencing Guidelines range is a reasonable sentence"). Hall has not shown a reasonable probability that the Court would not have accepted the parties' binding plea agreement to a sentence that fell within the Guidelines range without application of the enhancement. Therefore, Hall's ineffective-assistance-of-counsel claim is without merit.

## **Conclusion**

Hall's Motion to Supplement the Record (Doc. 51) is GRANTED. For the reasons explained above, I recommend that Hall's § 2255 Amended Motion (Doc. 43) be DENIED. Because the Amended Motion and other files and records in this case "conclusively show that [Hall] is entitled to no relief," I also recommend that an evidentiary hearing on the Motion is not necessary. 28 U.S.C. § 2255(b). I further recommend that the Court decline to issue a certificate of appealability because Hall has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Generally, a movant meets this burden by demonstrating that "reasonable jurists could debate whether . . . the [motion] should have been resolved in a different manner or that the issues presented [a]re adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). Hall has not satisfied this burden.

Dated at Burlington, in the District of Vermont, this 9th day of December 2022.

*/s/ Kevin J. Doyle*
Kevin J. Doyle
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections that shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (quoting *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989)).